James E. Cecchi
Caroline F. Bartlett
Zachary S. Bower
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Jay W. Eisenhofer
Robert G. Eisler
GRANT & EISENHOFER, P.A.
123 Justison Street
Wilmington, Delaware 19801
(302) 622-7000

*Attorneys for Plaintiff*
*[Additional Counsel listed on Signature
Page]*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARGARET OHAYON and all others similarly situated, | Civil Action No._____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL** |
| ESTÉE LAUDER, INC., CLINIQUE LABORATORIES, LLC, | |
| Defendants. | |

Plaintiff, by her attorneys, on behalf of herself and all others similarly situated, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    The search for eternal youth and beauty is hardly new.  For centuries men and women have attempted to forestall the inevitable aging process by cosmetic and surgical means.  Indeed, throughout history there has been no shortage of products, including the infamous "snake oil" tonic from a bygone era, that purported to "cure" the "disease of old age."

2.    Today, the search for a youth potion continues and, like a modern-day snake oil salesman, Estée Lauder, Inc. through its Clinique branded products, and/or manufactured by Clinique Laboratories LLC and/or Clinique Laboratories Dist. ("Estée," "Clinique," or "Defendants"[1]) preys on consumers' primal fear of aging and their eternal hope that products exist that can eliminate the signs of aging and effectively turn back time.

3.     In fact, Estée goes so far as to claim on the product packaging for its Youth Surge Night Age Decelerating Moisturizer that the product's "youth conserving agents" are "quite like a fountain of youth."

4.    Estée engages in such false, deceptive, or misleading conduct because it profits handsomely from its claims that its products, including those from the Repairwear collection, specifically Zero Gravity Repairwear Lift Firming Cream,

---

[1] As the precise corporate structure of Defendants is unclear at the time of filing, Plaintiff reserves the right to add additional Defendants should it become necessary as discovery progresses.  In addition, because the products themselves reference Clinique Laboratories Dist., while the advertisements and websites do not, the use herein of one of the Defendants shall not be deemed to exclude any other.  The Defendants have made it impossible for a consumer to determine which entity in fact produces, distributes, and sells the various Clinique Products.

2

Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector, Repairwear Uplifting Firming Cream, Repairwear Uplifting Firming Cream Broad Spectrum SPF 15, Repairwear Intensive Night Cream, Repairwear Intensive Eye Cream, Repairwear Laser Focus Wrinkle Correcting Eye Cream (collectively "Repairwear Products"), the Youth Surge collection, specifically Youth Surge Night Age Decelerating Moisturizer, Youth Surge Age Decelerating Moisturizer Broad Spectrum SPF 15, (collectively "Youth Surge Products"), and the Turnaround collection, specifically Turnaround Concentrate, Turnaround Overnight Radiance Moisturizer, and Turnaround Instant Facial (collectively "Turnaround Products") (together, "Clinique Products") have specific, age-negating effects on the human skin.

5.     As explained more fully herein, Estée has made, and continues to make, deceptive, false, or misleading claims and promises to consumers about the efficacy of its Clinique Products in a pervasive, nation-wide marketing scheme that confuses and misleads consumers about the true nature of the products and the results they provide.  In reality, the Clinique Products do not live up to the efficacy claims made by Estée.

6.     Estée knows this, yet designs its marketing and advertising campaign to include indicia of scientific research and discovery alongside promises of specific results for the sole purpose of misleading and deceiving consumers.  As a result, Estée's marketing pitch is the same as that of the quintessential snake-oil salesman

3

– Estée dupes consumers with false and misleading promises of results it knows it cannot deliver, and does so with one goal in mind – reaping enormous profits.

7.     Indeed, the only reason a consumer would purchase the Clinique Products instead of lower-priced moisturizers, which are readily available, is to obtain the unique results that Estée promises.

8.     A direct effect of this pervasive and deceptive marketing campaign is that consumers across the country, including Plaintiff and the proposed Class, relied upon Estée's false, deceptive, or misleading misrepresentations and purchased skin-care products that do not, and cannot, provide the results promised.

9.     Estée's false, deceptive, or misleading statements about the efficacy of a particular product are equally applicable to each of the products within that specific collection.  For example, for the Repairwear Products, Estée specifically promises that the unique Repairwear formula will rebuild firming collagen and cause wrinkles to "disappear" by 63% (face) and 54% (eye area) respectively. Accordingly, because Estée repeats essentially the same misleading efficacy promises for each of the Repairwear Products, the misleading claims touting the supposed benefits are equally applicable to all of the Repairwear Products.  The same holds true for the Youth Surge and Turnaround lines of products.

10.     In addition, Estée frequently markets across its Clinique Products product lines. For example, on the web page extolling the efficacy claims for Youth Surge Age Decelerating Moisturizer Broad Spectrum SPF 15, Estée also suggests using Repairwear Intensive Eye Cream.

11.     Moreover, on the Clinique web page that comes up when a consumer clicks on the concern "De-Aging" (see screen shot below), Estée makes the following efficacy claims without regard to any one specific product: "Defend & Rescue: Protect skin from the visible effects of emotional and environmental stresses"; "Repair Lines & Wrinkles: De-aging powerhouses work to repair and help slow visible aging 24/7"; "Firm & Lift Contours: Help skin rebuild firming natural collagen to appear smoother, more lifted."  Because none of these efficacy claims are product specific, consumers seeking information about products which purport to address "De-Aging" concerns are exposed to broad-based efficacy claims that encompass multiple Clinique Products.



12.     Estée's marketing campaign for each of the Clinique Products also follows the same deceptive pattern and practice – Estée makes specific efficacy promises supported, for example, by pseudo-scientific references or purported "Before and After" photos that deceive and mislead consumers into believing that Clinique Products will provide the promised results.  Such promises are deceptive and misleading.

13.     Another example of Estée's pattern and practice of deceptively marketing Clinique Products is the misleading claim that the products address the concern of "De-Aging."  This claim suggests to consumers that the Clinique Products are actually able to reverse the aging process and/or the signs of aging.[2]  Estée makes this misleading claim despite knowing full-well that no ingredient in its Clinique Products is able to reverse the signs of aging.

14.     Estée sells its Clinique Products to consumers in a different manner than less expensive wrinkle creams or moisturizers, which affects the manner in which Plaintiff and the Class are exposed to the false and deceptive claims.  While lower-priced consumer products are available on the shelves of drug stores and supermarkets, the Clinique Products are sold mainly over counters at high-end department stores.  Sales persons who are specifically trained and compensated by Estée to sell its Clinique Products and who are provided with a regularly updated reference "Sourcebook" touting the efficacy claims for each of its products, routinely

---

[2] The prefix "de" means to reverse the action of or to remove.  *See* The American Heritage Dictionary, available at http://americanheritage.yourdictionary.com/de-prefix, last accessed 12/20/12; Webster's New World Dictionary, available at http://websters.yourdictionary.com/de-prefix, last accessed 12/20/12.

occupy the counters, where Estée also provides consumers access to product displays and sales brochures. Accordingly, instead of making a side-by-side comparison of product packaging on store shelves, consumers of the Clinique Products decide to purchase these products almost exclusively by virtue of marketing campaigns that reach consumers before they enter the retail outlets (i.e., print media advertisements, television commercials or internet marketing) or over-the-counter sales and advertising.

15.     Plaintiff and the Class were exposed to Estée's pervasive, deceptive, or misleading advertising messages and material omissions regarding the efficacy promises of the Clinique Products and relied on those material misstatements and omissions in deciding to purchase Clinique Products.

16.     Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of at least one of the Clinique Products ("the Class") at any time from the date of product launch for each of the Clinique Products to the present (the "Class Period") for violation of consumer protections laws including, the New Jersey Consumer Fraud Act, § N.J.S.A. § 58:8-1, *et seq.*, breach of express warranty, unjust enrichment and for violations of the consumer fraud laws of the various states. Pending completion of discovery, Plaintiff may seek leave to amend the Class definitions.

17.     Plaintiff seeks relief individually and on behalf of a nationwide class and a subclass of residents of her home state of New Jersey (the "New Jersey Subclass").

## THE PARTIES

18.     Plaintiff Margaret Ohayon is a citizen of the State of New Jersey, residing in Bergen County.  Plaintiff purchased Clinique Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector from Bloomingdale's department store at the mall in Paramus, New Jersey.  As set forth in greater detail herein, Plaintiff saw, read, and received Estée's material misrepresentations, including Estée's many false and misleading product claims and relied on those material mis-statements in making her decision to purchase the Clinique Products.  Plaintiff would not have purchased Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector had Estée not made such false and deceptive claims and instead disclosed the true nature of its products.

19.     Defendant Estée Lauder, Inc. is a Delaware corporation with its principal place of business in New York, New York.

20.     Defendant Clinique Laboratories, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)  because there are more than 100 class members and the aggregate amount in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

22.    Pursuant to 28 U.S.C. §1391, venue is proper in this Court because Defendants conduct business in this District and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

**GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

### I.  Estée's Misleading Efficacy Claims

23.    A central theme of Estée's deceptive marketing campaign for the Clinique Products, which permeates throughout its print and web-based advertisements, product packaging, sales brochures, and in-store displays is that the Clinique Products, and the results promised, will provide specific age-negating benefits.

24.    For example, among other things, Estée makes the following specific promises in its sales and marketing materials, including, but not limited to, its website, product displays, product brochures, and product packaging:

Zero Gravity Repairwear Lift Firming Cream

- To firm up, you don't have to move a muscle – just let this power formula help skin "defy" gravity.  It achieves this uplifting feat by helping skin rebuild firming natural collagen.  Skin appears smoother, more lifted.
- An instant firming sensation goes on to deliver visible, measurable lift and firming cushion, fueled by a Peptide complex. (That's proteins, if you didn't know.) Patented* formula helps block and mend the look of lines and wrinkles.

Repairwear Uplifting Firming Cream

- Helps restore dermal cushion in as little as 4 weeks.
- Moisture-rich cream boosts natural elastin and collagen – the stuff that gives skin its snap
- Helps organize skin into a tighter, stronger network.
- Helps rebuild elasticity and firmness, helps visibly smooth out laugh lines from nose to mouth

- New firmness helps visibly sculpt jawline
- Strengthen and rebuild skin's elasticity and resistance to gravity

Repairwear Uplifting Firming Cream Broad Spectrum SPF 15

- Light, richly moisturizing cream that visibly tightens, lifts and firms the face and neck to rebuild skin's youthful appearance with the added important SPF15 protection benefit.
- The unique formula helps empower skin to "defy" gravity by helping rebuild firming natural collagen.

Repairwear Intensive Night Cream

- Works all night to help block and mend the look of lines and wrinkles.
- Rebuilds stores of firming natural collagen.
- Fuels 24-hour antioxidant replenishment that arms skin for tomorrow.

Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector

- In 4 weeks, this product delivers an obvious reduction in lines and wrinkles while improving skin's overall texture.
- Based on decades of scientific research, this potent serum enlists peptides to visibly help repair lines and wrinkles.
- A patented enzyme blend also works to mend sun's visible damage.
- At 12 weeks, its visible wrinkle-reducing power comes remarkably close to the profound wrinkle repairing results of a dermatological laser procedure.
- Clinique guarantees impressive results and your best, most beautiful skin.
- **Research results:**
  Proven to deliver 63 percent of the visible wrinkle-reducing power of a laser procedure at 12 weeks.
- Wrinkle and UV damage corrector.

Repairwear Laser Focus Wrinkle Correcting Eye Cream

- See your entire eye area visibly improved starting in 4 weeks.
- Then, we went beyond our usual clinical testing and invented a unique test to prove "smile lines" around eyes disappear by 54% in 12 weeks.

Repairwear Intensive Eye Cream

- **What it is formulated to do:**
  This potent antiaging eye cream stimulates skin's natural repair functions, specifically targeting the appearance of eye-area lines and wrinkles. It replenishes antioxidants to strengthen vulnerable skin for a brighter, more vibrant, and refreshed look.
  Potent moisturizer to repair and prevent the appearance of lines, wrinkles.

- **What else you need to know:**
  This patent pending product is ophthalmologist tested and ideal for all skin types.

Youth Surge Night Age Decelerating Moisturizer

- **What it is:**
  A youth-extending moisturizer with repair-boosting ingredients that go to work while you're at rest.

  **What it is formulated to do:**
  This nightly moisturizer uses Sirtuin, a patent-pending technology from Clinique that intensifies the nightly cycle of natural repair.  This product's potent, youth-extending agents boost collagen and calm the effects of environmental irritants – helping skin to reset the clock.  Lines and wrinkles appear to evaporate.  By morning, skin gains an energized "eight-hour effect."

- Clinique science uses youth-conserving agents for a nightly moisturizer quite like a fountain of youth.
- Intensifies natural cellular repair.
- The hard work of lifting lines and wrinkles takes time.  In about 4 weeks you will begin to see measurable, visible improvement.

Turnaround Concentrate

- **What it is:**
  A concentrated serum that instantly reveals healthy radiance so skin seems to glow from within. Instantly reveals newborn skin.  This high-performance serum brings fresh, vibrant cells to the surface.
- **What it is formulated to do:**
  This silky, oil-free serum gently replaces dull, worn-out surface cells with livelier, more luminous ones. Skin breathes and accepts moisture better. Then it optimizes up-and-coming cells to help the best and brightest emerge. Day after day, skin becomes smoother, younger-looking, and more radiant.

Turnaround Overnight Radiance Moisturizer

- An overnight moisturizer that tones, retexturizes, and plumps skin.
- **What it is formulated to do:**
  This moisturizer goes to work while you sleep to optimize new cell turnover and help the best and brightest emerge. It pumps in moisture to help tone, retexturize and plump skin from the inside out.

Turnaround Instant Facial

- In 5 minutes, this high-performance facial delivers all the radiance and smoothness of microdermabrasion-with significantly less irritation and stress to skin.

- Promotes surface cell turnover on multiple levels to instantly unveil skin that's fresher, more vibrant and even-toned.

25.     The foregoing efficacy claims are false, deceptive or misleading.

26.     In fact, while such science-oriented claims provide Estée's Clinique Products with an increased level of credibility among unsuspecting consumers, and therefore increased sales, the purported scientific-sounding claims are simply part and parcel of Estée's deceptive and misleading advertising campaign.

27.     One of the reasons Estée saturates its marketing campaigns with misleading scientific references, such as references to patents and dermatologic procedures, is that it knows that such repeated and pervasive references makes it more likely that consumers will believe that its products are approved by the Food and Drug Administration ("FDA"), when in fact they are not.  Estée knows that consumers who believe that the Clinique Products have received FDA approval are more likely to believe Estée's false efficacy promises and therefore more likely to purchase the Clinique Products.  Indeed, if Clinique Products actually "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair," or provide the other promised age-negating results described herein, they would trigger regulation by the FDA as a drug.

28.     Estée relies on promises of specific results backed up by the indicia of scientific reliability (*e.g.*, patents, tests, "dermatological solutions," and comparison to cosmetic procedures, like laser treatment) because it knows that such science-oriented claims render consumers more likely to believe the empty efficacy promises, and therefore more likely to purchase its products.

29.     Even if one or more of Estée's claims is literally true, when viewed in their totality, the promises made by Estée regarding the efficacy of the Clinique Products are nevertheless misleading to the average consumer and are therefore actionable regardless of their literal truthfulness.

30.     Moreover, to the extent that the Clinique Products provide any of the promised results, such results are merely temporary.  Estée knows this, yet fails to disclose it to consumers, leaving Plaintiff and the Class with the belief that the promised age-negating benefits will be permanent.

## II.     Clinique's Misleading and Deceptive Visualization and Before and After Tools

31.     Estée compounds its false, misleading and deceptive efficacy claims by providing consumers with illustrations of the results consumers can expect from using its products.   Indeed, a central component of Clinique's website allows consumers to visualize their specific results through Clinique's "Virtual Skin Care Tool."



32.   This online marketing tool purports to allow consumers to:

> See for yourself what Repairwear Laser Focus can do for your
> skin.  This virtual preview will show you the potential wrinkle
> reducing effects after 12 weeks of consistent use.  What you'll
> notice: a softening of lines, wrinkles, sun damage.  Get started
> now and discover results remarkably close to a dermatological
> laser procedure – 63% to be exact.

33.   In order to "see for themselves" consumers have the option to upload a

photograph so that they can see the personal changes that Estée promises by using

the Repairwear Product.

34.   If the customer does not have a picture available, Estée provides the

option of "selecting a model" to see the Before and After results.   The results are

then presented as a series of pictures that purport to show how the Estée product

eliminates wrinkles:

14



35.     While Estée claims, via an asterisk with microscopically small type at the bottom of the page, that its "Visualize Your Results" section is a mere "dramatization," and that "actual result[s] may vary," Estée affirmatively claims that the results "dramatiz[ed]" actually do "represent[] average results."

36.     The combination of these two contradictory concepts – a dramatization that supposedly represents actual average results – is deceptive and misleading to reasonable consumers, because a dramatization cannot depict actual or real results – it can only depict someone's fictional interpretation of results.   Thus, even if consumers read the small print in asterisk, they are left with the impression that they will obtain, on average, the results "dramatized" in the picture, which is impossible.

37.     Estée further compounds this deception by providing consumers with what it claims are "real Before and After" results over time and instantly:

Over Time:



Instant Results:



38.     These "Real Before-and-Afters," which are also found in the product brochures provided at Clinique's in-store sales counters, do not have any disclaimers and therefore leave consumers with the impression that the results pictured can be expected when consumers decide to purchase the Clinique Products.

39.     Such before and after pictures and visualizations further reinforce the deceptive, false, and misleading efficacy promises made by Estée and leave consumers with the mistaken belief that the use of the Clinique Products will erase or remove their wrinkles.

40.     Unfortunately for consumers, these promises are illusory.  Clinique Products cannot remove wrinkles.

### III.    Guaranteed Results



41.     Clinique outfits its sales counters at many department stores with displays (such as the one appearing above) that include IPADs with an application devoted to assisting consumers in their selection of Clinique Products.   The application, which is also accessible to consumers on the Clinique website, asks a series of questions pertaining to skin concerns, processes over 180,000 product combinations, and culminates in a "Skin Consultation Printout" that identifies Clinique-recommended products and a "customized plan with results guaranteed."

42.     Thus, through the use of this marketing tool, Estée promises that no matter what combination of answers a consumer gives to the application questions, the recommended Clinique Products (out of more than 180,000 possible combinations) will provide results that are guaranteed.

43.     Estée makes similar guaranteed results promises for other products, including Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector, for which it states "Clinique guarantees impressive results and your best, most beautiful skin."

## IV.     Product Cycles

44.     To perpetuate its deceptive and misleading scheme, Clinique has a short product cycle, releasing new products every few years based upon some new "research" or purported new ingredient.  Clinique does so in order to falsely tout its new products via a re-imagined marketing campaign in order to keep driving sales and profits that would otherwise stagnate once consumers used the products and realized that they do not perform as promised.  This scheme is evidenced by the fact

that Clinique discontinues sales and production of its older products once new products are introduced to the market, despite the fact that the claims made on the discontinued products are seemingly amazing scientific breakthroughs.

45.     For example, Clinique's Zero Gravity Repairwear Lift Firming Cream has been discontinued despite the fact that it was made of a patented formula that purportedly "deliver[ed] visible, measureable lift and firming cushion, fueled by a Peptide complex."

46.     Estée's discontinuation of purportedly effective products, like Zero Gravity Repairwear Lift Firming Cream, from the market demonstrates that Estée's promised benefits are illusory and nothing more than deceptive marketing.

## IV.    Clinique's Pervasive and Misleading National Marketing Campaign

47.     Clinique's pervasive false, deceptive, or misleading national marketing campaign includes the dissemination of deceptive advertising through a variety of mediums including, but not limited to, internet, television, and print media. Many of the same deceptive and misleading statements are also printed on the product handouts, product packaging, and sales brochures available to consumers at Clinique counters in department stores.

### A. Internet and Television Marketing

48.     Clinique's internet marketing includes, among other things, video presentations, statistical data, and question and answer information on its own website, Clinique.com. Many of its commercials and promotional videos are also readily accessible on youtube.com and on third party websites such as Macys.com.

19

Each of these sources provides consumers access 24 hours a day, 7 days a week, to Estée's deceptive advertising.

49.    Examples of the online videos include the video below, which is currently available on Clinique.com, youtube.com, and other third party websites, and which purports to show the benefits of the Turnaround products, including their ability to "speed fresh cells to the surface":



## Say goodbye to dullness.

How our Turnaround team transforms skin from dull to vibrant.

USE THE SLIDER BELOW TO SEE THE BENEFITS OF VIBRANT SKIN



### Turnaround products

- Sweep away skin's dull, flaky, tired surface.
- Speed fresh cells to the surface, revealing your brightest, smoothest, healthiest skin.

DULL          VIBRANT

---

## Say goodbye to dullness.

How our Turnaround team transforms skin from dull to vibrant.

USE THE SLIDER BELOW TO SEE THE BENEFITS OF VIBRANT SKIN



### Turnaround products

- Sweep away skin's dull, flaky, tired surface.
- Speed fresh cells to the surface, revealing your brightest, smoothest, healthiest skin.

DULL          VIBRANT



50.    Similarly, this television commercial for Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector, which is also currently available on Clinique.com, youtube.com, and other third party websites purports to show the benefits of using the Repairwear Products, which include the ability of Repairwear to "smooth lines" and "repair UV damage."   The commercial goes on to direct consumers to Clinique.com where they can see for themselves the "proof" of the benefits of Repairwear, which, includes use of the misleading Virtual Skin Care tool (as discussed in part II above):



Now Clinique says, forgive the past



Protect the future



A serum that helps visibly…



…repair UV damage



Improves skins' texture



And smoothes eye-area lines and wrinkles.  The difference will astound you.



See 63% of…



…the visible wrinkle reducing power of a dermatological laser procedure.



Now a second chance for every skin.



Repairwear Laser Focus from Clinique.



B. <u>Print Media and Sales Brochures</u>

51.    Estée markets its Clinique Products in print media, including the placing of advertisements in such widely circulated magazines as Glamour, Cosmopolitan, Allure, among others.

52.    The specific dates and places of each of Estée's advertisements for Clinique Products are in the possession of Defendants.

53.    Estée also makes sales brochures and product handouts available at Clinique counters in department stores.  These sales brochures and product handouts contain much of the same deceptive or misleading efficacy claims as those that appear on the Clinique website and in other advertising media.  For example, in one sales brochure, Estée touts that Repairwear Intensive Eye Cream will "repair and prevent the appearance of lines, wrinkles."  This efficacy claim is misleading to consumers on multiple levels.  First, it makes no sense to claim that a product can "repair" the *appearance* of something, so the logical interpretation of this claim is

28

that the product can actually repair the lines and wrinkles themselves (compared to "reducing" the appearance of lines, wrinkles). Similarly, the "prevent" claim only makes sense if consumers conclude that Estée is promising that the product can prevent lines and wrinkles from appearing in the first instance, as opposed to preventing the appearance of lines and wrinkles that already exist (an obvious impossibility). In fact, while the use of the "appearance of lines, wrinkles" language is an attempt to remedy the deceptive nature of the marketing message, the attempt fails because it conveys a conflicting and misleading message. Consumers are left with the false and misleading impression that Repairwear Intensive Eye Cream will actually "repair" their lines and wrinkles and/or "prevent" their lines and wrinkles from appearing in the first place.

54. The use of the "repair" and "prevent" language is a clear attempt by Estée to separate itself from more common efficacy claims such as "reduces the appearance of lines and wrinkles." Estée intentionally makes the choice to convey a more highly efficacious – and more misleading – message in order to convince consumers that its products are superior to its competitors, and therein drive sales and profits.

55. Another example of the in-store sales brochures provided by Estée for the Clinique Products is the following, which regurgitates many of the same efficacy claims made elsewhere:



# A second chance for every skin.

"Today, it's possible to use skin care products to treat the visible signs of aging, resist irritation and prevent further UV-damage."

—Clinique guiding dermatologist

## CLINIQUE

Allergy Tested. 100% Fragrance Free.

## What ages my skin?

Our guiding dermatologists believe that genes play a smaller role than many factors you can control. To start, daily sun protection. Did you know as much as 80% of all skin damage before age 60 is considered sun-related?

Then, lifestyle choices of diet, exercise, smoking, etc. speed or slow the clock. So do stress and erratic daily skin care.

## Can I age-proof my skin… or slow the clock?

Look younger, longer. It really can be done. And it's a lot simpler than you might think. Clinique has customized solutions to address your concerns at every age.

Our dermatologist-developed daily routine is a simple, efficient way to get skin into top working order. And our gentle, everyday sun protection helps skin escape the damage from aging (UVA) and burning (UVB) rays.

## Let's get you started.



## Repair lines and wrinkles.

### Day and night
☐ Repairwear Laser Focus Wrinkle & UV Damage Corrector
In 4 weeks, see obvious reduction in wrinkles and improved texture from sun damage. At 12 weeks, see 63% of the wrinkle-reducing power of a dermatological laser procedure. Different commitment, different results, and yet impressive results guaranteed.

### By day
☐ Youth Surge Age Decelerating Moisturizer Broad Spectrum SPF 15
Thanks to youth-extending agents, lines and wrinkles seem to evaporate, replaced by plump, vibrant skin. With UVA/UVB protection.

My Skin-Typed formula

### By night
☐ Youth Surge Night Age Decelerating Night Moisturizer
Intensifies the natural nightly cycle of natural repair to visible effect. Skin looks rested, vibrant.

My Skin-Typed formula



How Repairwear Laser Focus softens the look of lines, wrinkles and sun damage.

Before

After 12 weeks




C. <u>Sales Representatives</u>

56.     Upon information and belief, Estée also provides training and disseminates uniform information, including a regularly updated "Sourcebook" detailing the false or deceptive efficacy claims, to Clinique sales persons who work the Clinique counters at department stores, like Macy's and others.   These department store sales representatives, to whom Estée provides a portion of their compensation, are trained by Estée to parrot and reinforce the same purported benefits of using the Clinique Products as contained in Estée's other forms of advertising.

D.     Use of Models

57.     Estée makes further use of print, television, and internet advertising, wherein Estée touts the benefits of its Clinique Products using models who claim to exemplify the results of the products.

58.     What Estée fails to disclose is that the images of the models it uses are airbrushed, digitized, embellished, "Photo-shopped," or otherwise altered and, therefore, contrary to the claims made by Estée, cannot and do not illustrate the effectiveness of its products.  In sum, the images used by Estée to sell its Clinique Products have nothing to do with the effectiveness of the products themselves.

59.     Most recently, the National Advertising Division in the United States has taken a stance against the use of Photoshop in cosmetics advertising, noting that "[a]dvertising self-regulatory authorities recognize the need to avoid photoshopping in cosmetics advertisements where there is a clear exaggeration of potential product benefits."

60.     Such deceptive use of models only further illustrates the lengths to which Estée will go to trick consumers to make a profit.

**V.   The Results of Clinique's Deceptive Conduct**

61.     Ignoring the inability of the Clinique Products to provide the promised results, Estée's pervasive false and misleading marketing campaign leaves consumers with the impression that its products are uniquely able to provide certain age-negating effects on human skin.

62.   Estée also is aware that, because of the aging population, consumers are increasingly susceptible to such deceptive marketing and advertising and that such marketing and advertising will continue to yield it ever-greater profits.

63.   Estée is in a position to actually know, or should know, that the promised results are not possible, *i.e.* its Clinique Products cannot "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair," or provide the other promised age-negating results described herein.  Estée fails to disclose that its Clinique Products do not perform as promised.

64.   Clinique compounds this deception with misleading Before and After photos and the personal visualization of results via the Virtual Skin Care Tool that purport to demonstrate expected results, further enticing consumers to purchase and use the product.  The claims of efficacy based on "dramatized" promises of actual performance are a material and important factor in its marketing campaign because Estée knows that consumers are more likely to believe efficacy promises, and purchase Clinique Products, when consumers see purported Before and After results.

65.   In addition to the material misrepresentations as described herein, Defendants' actions are likewise actionable based on their material omissions,

which similarly induced Plaintiff and the Class to purchase the Clinique Products. For example, Defendants have failed to disclose the following:

- That none of the Clinique Products provide unique benefits that cannot be found in other, less expensive products; and

- That any benefits actually provided by the use of the Clinique Products are only temporary.

66.    As a result of its deceit, Estée has reaped massive profits.  Such enormous profits would not have occurred but for Estée's deceptive and misleading marketing and advertising campaign.

67.    Estée charges a premium for its Clinique products.  Plaintiff and the Class would not have paid premium prices for the Clinique Products had they known the truth regarding the deceptive marketing promises.

68.    Moreover, Plaintiff and the Class believed they were purchasing Clinique Products that would provide the promised age-negating benefits as detailed herein.  In reality, although Plaintiff and the Class paid for these unique Clinique Product benefits, they did not get what they paid for.  Instead, the products Plaintiff and the Class purchased did not provide the promised age-negating results.

69.    As a result and because of Estée's deceptive marketing, Plaintiff and the Class have been and continue to be harmed in their purchases of the Clinique Products.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) on behalf of the following nationwide consumer class (the "Class"):

> All purchasers of at least one of the Clinique Products in the United States from date of product launch to the present (the "Class Period").  Excluded from the Class are Defendants, their parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

71.     Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased one or more Clinique Products in New Jersey (the "New Jersey Subclass").

72.     Members of the Class and the New Jersey Subclass are so numerous that their individual joinder herein is impracticable.  Members of each of these classes number in the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party sales people.

73.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

> (a)     whether Defendants were unjustly enriched by their conduct;

    (b)    whether Defendants breached an express warranty made to Plaintiff and the Class;

    (c)    whether Defendants advertise or market the Clinique Products in a way that is deceptive, false or misleading;

    (d)    whether Defendants concealed from Plaintiff and the Class that its Clinique Products do not provide the promised results;

    (e)    whether, by the misconduct set forth in this Complaint, Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sales of its Clinique Products;

    (f)    whether Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. § 58:8-1, *et seq.*;

    (g)    whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

74.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiff has no interests antagonistic to the interests of the other members of the Class.  Plaintiff and all members of the Class have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

75.    Plaintiff is an adequate representative of the Class because her interest does not conflict with the interests of the Class members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

76.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.   Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### (Violation of the New Jersey Consumer Fraud Act)

77.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

78.     Plaintiff brings this action on behalf of herself and on behalf of members of the New Jersey Subclass.

79.     Defendants misrepresented that the Clinique Products would provide certain permanent age-negating results including, but not limited to Defendants' representations that the Clinique Products "deliver 63 percent of the visible

wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair,"  or provide the other promised age-negating results as described herein.

80.    Defendants' claims that such age-negating benefits were the result of unique scientific discoveries are further deceptive or misleading, as are the references to Before and After photos, among other things, as described herein.

81.    Defendants' affirmative misrepresentations constitute an unconscionable commercial practice, deception, fraud, false promise and/or misrepresentation as to the nature of the goods, in violation of the New Jersey Consumer Fraud Act.  Moreover, Defendants intentionally failed to disclose the truth behind the purported scientific discoveries, before and after photos and supporting clinical data; that is, the basis upon which Estée relies to justify the price premiums for the Clinique Products is nothing more than a sham.  Indeed, any studies or data source was designed for use in Clinique's marketing campaign and not to test whether the Clinique Products actually performed as promised.

82.    Defendants' knowing and intentional omissions as described herein constitute a violation of the New Jersey Consumer Fraud Act.

83.     Plaintiff and all Class members suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they were induced to purchase, or paid a price premium, due to the misleading and false advertising and deceptive promises of age-negating efficacy of the Clinique Products, when, in fact, those qualities did not exist.  Simply put, Plaintiffs and Class members paid for the advertised benefits of the Clinique Products and did not get what they paid for.

84.     Indeed, their purchases are of no value because the Clinique Products do not provide the advertised age-negating benefits.

## COUNT II
### Unjust Enrichment

85.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

86.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New Jersey Subclass against Defendants.

87.     Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the

different jurisdictions from which class members will be drawn, New Jersey law applies to those claims.

88.    Plaintiff and Class members conferred a benefit on Defendants by purchasing one or more of the Clinique Products.

89.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Clinique Products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented the efficacy of the Clinique Products, which caused injuries to Plaintiff and Class members because either they paid a price premium due to the deceptive advertising and false promises of efficacy or they purchased products that did not perform as promised and were therefore of no value to Plaintiff and Class members.

90.    Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT III
### Breach of Express Warranty

91.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

92.    Plaintiff brings this Count on her own behalf under the law of the state in which she purchased Clinique Products and on behalf of: (a) all other persons who purchased Clinique Products in the same State; and (b) all other persons who

purchased Clinique Products in States having similar laws regarding express warranty.

93.     Defendants' representations that the Clinique Products "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair,"  or provide the other promised age-negating results as described herein are affirmations by Defendants that the Clinique Products would deliver the age-negating benefits promised.

94.     Defendants made express representations that Clinique Products would provide "results guaranteed."

95.     Defendants' representations regarding the Clinique Products are made to Plaintiff and members of the Class at the point of purchase, are part of the description of the goods, and the bargain upon which they are offered for sale and purchased by Plaintiff and members of the Class.

96.     In addition, or in the alternative, Defendants' representations are made to induce Plaintiff and members of the Class to rely on such representations, and Plaintiff and members of the Class did so rely on said representations as a material factor in his/her decision to purchase the Clinique Products.  Plaintiff and the members of the Class would not have purchased the Clinique Products but for these representations and warranties.

41

97.    The Clinique Products did not, in fact, meet the representations Defendants made about the Clinique Products, as described herein.

98.    At all times relevant to this action, Defendants falsely represented that its Clinique Products  "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair," or provide the other promised age-negating results as described herein when they do not, in breach of these express warranties.

99.    At all times relevant to this action, Defendants made false representations in breach of the express warranties and in violation of state express warranty laws, including:

    a.    Ak. St. §42.02.313.

    b.    Ariz. Rev. Stat. Ann. §47-2313.

    c.    Ark. Code Ann. §4-2-313.

    d.    California Commercial Code §2313.

    e.    Colo. Rev. St. §4-2-313.

    f.    Conn. Gen. Stat. Ann. §42a-2-313.

    g.    D.C. Stat. §28:2-313.

    h.    Haw. Rev. Stat. §490:2-313.

    i.    Ind. Code §26-1-2-313.

    j.    Kansas Stat. Ann. §84-2-313.

    k.    La. Civ. Code. Ann. Art. 2520

    l.    11 Maine Rev. Stat. Ann. §2-313.

m.    Mass. Gen. Laws Ann. 106 §2-313.

n.    Minn. Stat. Ann. §336.2-313.

o.    Miss. Code Ann. §75-2-313.

p.    Missouri Rev. Stat. §400.2-313.

q.    Mont. Code Ann. 30-2-313.

r.    Neb. Rev. Stat. §2-313.

s.    Nev. Rev. Stat. §104.2313.

t.    N.H. Rev. Stat. §382-A:2-313.

u.    N.J. Stat. Ann. 12A:2-313.

v.    N.M. Stat. Ann. §55-2-313.

w.    N.Y. U.C.C. Law §2-313.

x.    N.C. Gen. Stat. Ann. §25-2-313.

y.    Okla. Stat. Ann. Tit. 12A, §2-313.

z.    Or. Rev. Stat. §72.3130.

aa.   Pa. Stat. Ann. Tit. 13, §2313.

bb.   R.I. Stat. §6A-2-313.

cc.   S.C. §36-2-313.

dd.   S.D. Cod. Laws. §57A-2-313.

ee.   Tenn. Code Ann. §47-2-313.

ff.   Tex. Bus. & Com. Code Ann. §2.313.

gg.   Ut. Code Ann. §70A-2-313.

hh.   Vt. Stat. Ann. §2-313.

ii.   Wa. Ann. 62A.2-313.

jj.   W. Va. Code §46-2-313.

kk.   Wyo. Stat. 34.1-2-313.

100.   The above statutes do not require privity of contract in order to recover for breach of express warranty.

101.   As a result of Defendants' conduct, Plaintiff and members of the Class were damaged.

102.   Within a reasonable time after she knew, or should have known, of such breach, Plaintiff, on behalf of herself and members of the Class, placed Defendants on notice thereof.

## COUNT IV
### Violation of the Consumer Fraud Laws of the Various States

103.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

104.   In addition to and/or in the alternative to the foregoing causes of action, Plaintiff brings this cause of action on her own behalf under the law of the State in which she purchased Clinique Products and on behalf of: (a) all other persons who purchased Clinique Products in the State where Plaintiff purchased Clinique Products; and (b) all other persons who purchased Clinique Products in States with similar consumer protection laws.

105.   Plaintiff and each member of the Class is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws of the State in which he or she purchased the Clinique Products.

106.   The consumer protection laws of the State in which each Plaintiff and member of the Class purchased the Clinique Products declares that unfair or deceptive acts or practices, in the conduct of trade or commerce are unlawful.

107.   Forty States and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

a.   Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1, et seq.;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code §45.50.471, et seq.;

c.   Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, et seq.;

d.   California Consumer Legal Remedies Act, Cal. Civ. Code §1750, et seq., and California's Unfair Competition Law, Cal. Bus. & Prof Code §17200, et seq.;

e.   Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, et seq.;

f.   Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110a, et seq.;

g.   Delaware Deceptive Trade Practices Act, 6 Del. Code §2511, et seq.;

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§28 3901, et seq.;

i.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, et seq.;

j.   Georgia Fair Business Practices Act, §10-1-390 et seq.;

k.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues §480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, et seq.;

l.   Idaho Consumer Protection Act, Idaho Code §48-601, et seq.;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1, et seq.;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§50 626, et seq.;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§367.110, et seq., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§365.020, et seq.;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§51:1401, et seq.;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. §205A, et seq., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, §1211, et seq.,

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s. Michigan Consumer Protection Act, §§445.901, et seq.;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§325F.68, et seq.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, et seq.;

u. Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1, et seq.;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010, et seq.;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, et seq.;

x. Nebraska Consumer Protection Act, Neb. Rev. Stat. §59 1601, et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, et seq.;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§598.0903, et seq.;

z.    New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1, et seq.;

aa.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, et seq.;

bb.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §§57 12 1, et seq.;

cc.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§349, et seq.;

dd.    North Dakota Consumer Fraud Act, N.D. Cent. Code §§51 15 01, et seq.;

ee.    Ohio Rev. Code Ann. §§1345.02 and 1345.03; Ohio Admin. Code §§109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.    Oklahoma Consumer Protection Act, Okla. Stat. 15 §751, et seq.;

gg.    Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, et seq.;

ii.    South Carolina Unfair Trade Practices Act, S.C. Code Laws §39-5-10, et seq.;

jj.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1, et seq.;

kk.    Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 et seq.;

ll.    Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, §2451, et seq.;

mm.    Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010, et seq.;

nn.    West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101, et seq.;

oo.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§100.18, et seq.

108.    The Clinique Products constitute products to which these consumer protection laws apply.

109.    In the conduct of trade or commerce regarding their production, marketing, and sale of the Clinique Products, Defendants engaged in one or more unfair or deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and each Class member by means of its advertising, marketing and other promotional materials, and on the packaging and labeling of the Clinique Products that Clinique Products would "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensified natural cellular repair," or provide the other promised age-negating results as described herein.

110.    Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

111.    Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive and/or likely to deceive.

112.    Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Class rely thereon.

113.    Plaintiff and the other members of the Class did so rely.

114.   Each Plaintiff and member of the Class purchased Clinique Products produced by Defendants which misrepresented the characteristics and nature of the products.   Plaintiff and members of the Class would not have purchased the Clinique Products but for the deceptive and unlawful acts of Defendants.

115.   As a result of Defendants' conduct, Plaintiff and members of the Class were damaged.

116.   Defendants conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.   For an order certifying the nationwide Class and the New Jersey Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and her attorneys as Class Counsel to represent the Class members;

B.   For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.   For an order finding in favor of the Plaintiff, the nationwide Class, and the New Jersey Subclass on all counts asserted herein;

D.   For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.   For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For injunctive relief as pleaded or as the Court may deem proper; and

H.     For an order awarding Plaintiff, the nationwide Class, and the New Jersey Subclass their reasonable attorneys' fees and expenses and costs of suit.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By: ___/s/ James E. Cecchi_____
     JAMES E. CECCHI

Dated:  January 11, 2013          Caroline F. Bartlett
     Zachary S. Bower
     CARELLA, BYRNE, CECCHI,
     OLSTEIN, BRODY & AGNELLO, P.C.
     5 Becker Farm Road
     Roseland, New Jersey 07068
     (973) 994-1700

     Jay W. Eisenhofer
     Robert G. Eisler
     GRANT & EISENHOFER, P.A.
     123 Justison Street
     Wilmington, Delaware 19801
     (302) 622-7000

     Mark Gardy
     Charles Germershausen
     GARDY & NOTIS, LLP
     560 Sylvan Avenue, Suite 3085
     Englewood Cliffs, New Jersey 07632
     Tel: 201-567-7377
     Fax: 201-567-7337

     Paul M. Weiss
     Julie D. Miller
     COMPLEX    LITIGATION    GROUP,
     LLC

513 Central Avenue, Suite 300
Highland Park, Illinois 60035
(847) 433-4500

Stephen A. Weiss
Jonathan Shub
Scott A. George
SEEGER WEISS LLP
77 Water Street
New York, New York 10005
(212) 584-0700

Joe R. Whatley, Jr.
Patrick J. Sheehan
WHATLEY KALLAS
380 Madison Avenue, 23rd Floor
New York, New York 10017

Joseph P. Guglielmo
SCOTT + SCOTT LLP
500 5th Avenue, 40th Floor
New York, New York 10110
(212) 223-6444

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated:  January 11, 2013                    By:    /s/ James E. Cecchi

JAMES E. CECCHI
Caroline F. Bartlett
Zachary S. Bower
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Jay W. Eisenhofer
Robert G. Eisler
GRANT & EISENHOFER, P.A.
123 Justison Street
Wilmington, Delaware 19801
(302) 622-7000

Mark Gardy
Charles Germershausen
GARDY & NOTIS, LLP
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

Paul M. Weiss
Julie D. Miller
COMPLEX   LITIGATION   GROUP,
LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
(847) 433-4500

Stephen A. Weiss
Jonathan Shub
Scott A. George
SEEGER WEISS LLP
77 Water Street

New York, New York 10005
(212) 584-0700

Joe R. Whatley, Jr.
Patrick J. Sheehan
WHATLEY KALLAS
380 Madison Avenue, 23rd Floor
New York, New York 10017

Joseph P. Guglielmo
SCOTT + SCOTT LLP
500 5th Avenue, 40th Floor
New York, New York 10110
(212) 223-6444